UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRACEE LEWIS-BURROUGHS,<br><br>       **Plaintiff,**<br><br>v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, SAINT BARNABAS HEALTH CARE SYSTEM HEALTH PLAN, A/K/A "A PLAN OF OUR OWN",<br><br>       **Defendants.** | Civ. No. 14-cv-1632 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

  The plaintiff, Tracee Lewis-Burroughs, brings this action to recover long-term disability benefits under an employee welfare benefits plan. The plan is covered by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Currently before the Court is the motion of the defendant, the Prudential Insurance Company ("Prudential"), to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust administrative remedies. For the reasons set forth below, the motion is denied.

**I. BACKGROUND[1]**

  Lewis-Burroughs was a nurse at Newark Beth-Israel Medical Center. In 2010, she began to suffer from a host of ailments, including Sjogren's Syndrome, systemic lupus, fibromyalgia, polyarthopathy, and Raynaud's Syndrome. (Compl., Dkt. No. 1, ¶25) These conditions, she says, caused extensive pain, joint swelling, muscle weakness, headaches, and cognitive decline. (*Id.* ¶27) By February 2011, she had become too ill to ably and safely perform her duties as a nurse. (*Id.*)

---

[1] For purposes of this Rule 12(b)(6) motion to dismiss, the allegations of the Complaint are taken as true.

Lewis-Burroughs is a participant in A Plan of Our Own, an employee welfare benefit plan governed by ERISA (the "Plan"). The Plan offers long-term disability ("LTD") benefits through Group Plan # G-49990-NJ, a policy issued by Prudential. Under the Plan, Prudential is the insurer of benefits as well as the administrator of claims. (*Id.* ¶29)

To receive LTD benefits, a plan-holder must qualify as "disabled." That means that Prudential must determine that the plan-holder (i) is unable to perform the material and substantial duties of her regular employment due to sickness or injury (ii) under the regular care of a doctor, and (iii) has experienced a loss in weekly earnings of 20% or more due to her sickness or injury. (*Id.* ¶32) A plan holder who meets those disability criteria is entitled to receive LTD benefits for up to 24 months. After that, the eligibility requirements are stiffer. To receive LTD benefits beyond the initial 24-month period, the plan holder must demonstrate, *inter alia*, that as a result of the same sickness or injury she is unable to perform the duties of *any* gainful occupation for which she is reasonably qualified. (*Id.* ¶33)

In August 2011, Lewis-Burroughs applied for LTD benefits. (*Id.* ¶43) Prudential approved her claim on August 11, 2011. (*Id.* ¶44) On November 9, 2012, Prudential sent Lewis-Burroughs a letter stating that it had reviewed her medical records and determined that she has "the capacity to work at a gainful occupation." (Dkt. No. 9-2, at 1; *see* Compl. ¶52) Accordingly, the letter concluded that she would be ineligible to receive LTD benefits after August 13, 2013—the day her initial 24-month benefits period would expire. (Dkt. No. 9-2, at 2) On January 8, 2013, Lewis-Burroughs filed a letter appeal of that determination. (Dkt. No. 9-2, at 6; *see* Compl. ¶56) On June 17, 2013, Prudential sent another letter that formally closed her disability claim. (Dkt. No. 9-2, at 9; *see* Compl. ¶62) This letter reiterated that Prudential had determined that no benefits were payable to Lewis-Burroughs beyond August 13, 2013. It also advised her that she had 180 days to appeal the decision.

On December 12, 2013, Lewis-Burroughs timely filed an appeal with supporting documentation. (Compl. ¶66; Dkt. No. 9-2, at 17)

On January 15, 2014, Lewis-Burroughs submitted an additional document: a Functional Capacities Evaluation that evaluated her capacity to perform work activities related to her employment. (*Id.* ¶67; *see also* Dkt. No. 9-2, at 72) Prudential had not specifically requested this document or otherwise indicated that it was necessary to decide the appeal.

The Plan requires that appeals of the denial of benefits be decided according to a strict schedule that generally sets an outside limit of 90 days:

> Prudential shall make a determination on your claim appeal within 45 days of the receipt of your appeal request. This period may be extended by up to an additional 45 days if Prudential determines that special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date that Prudential expects to render a decision shall be furnished to you within the initial 45-day period. However, if the period of time is extend due to your failure to submit information necessary to decide the appeal, the period for making the benefit determination will be tolled (i.e. suspended) from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information. (Dkt. No. 9-2, at 118)

The Plan's procedures regarding the timeliness of appeal decisions are designed to comply with regulations promulgated by the Department of Labor. The relevant regulation is 29 C.F.C. § 2560.503-1, which provides:

> [T]he plan administrator shall notify a claimant in accordance with paragraph (j) of this section of the plan's benefit determination on review within a reasonable period of time, but not later than [45] days after receipt of the claimant's request for review by the plan, unless the plan administrator determines that special circumstances (such as the need to hold a hearing, if the plan's procedures provide for a hearing) require an extension of time for processing the claim. If the plan administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial [45]-day period. In no event shall such

> extension exceed a period of [45] days from the end of the initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the plan expects to render the determination on review.
>
> For purposes of...this section, the period of time within which a benefit determination on review is required to be made shall begin at the time an appeal is filed in accordance with the reasonable procedures of a plan, without regard to whether all the information necessary to make a benefit determination on review accompanies the filing. In the event that a period of time is extended...due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information.

29 C.F.R. § 2560.503-1(i).

Lewis-Burroughs contends, based on the Plan and Regulations, that Prudential was required to decide her appeal by March 12, 2014—90 days after it first received her appeal request. Prudential disagrees. In a letter dated February 28, 2014, it stated that because Lewis-Burroughs had unilaterally supplemented her appeal with additional documents on January 15, 2014, the 90-day period was reset and began running from that day. (Compl. ¶ 69; *see* Dkt. No. 9-2, at 72) As Prudential saw it, the deadline to decide the appeal was therefore April 14, 2014. (*Id.*)

Lewis-Burroughs did not wait until April 14, 2014. On March 13, 2014—91 days after she first submitted her appeal—she filed this action pursuant to ERISA § 502(a)(1)(b), 29 U.S.C. § 1132(a)(1)(b). The sole count of her Complaint alleges that since August 13, 2013—the last day of her initial 24-month benefits period—Prudential has wrongfully failed to pay her the LTD benefits to which she is entitled under the Plan.

Prudential filed this motion to dismiss on May 12, 2014. Prudential asserts that Lewis-Burroughs cannot state a claim under Federal Rule of Civil Procedure 12(b)(6) because she failed to exhaust her administrative remedies. I

4

have considered this as a motion to dismiss, and also considered the evidence proffered by Prudential as if this were a summary judgment motion. Either way, the complaint survives.

## II. LEGAL STANDARDS

### 1. Rule 12(b)(6) Motion

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff or counterclaimant. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that well-established "reasonable inferences" principle is not undermined by intervening Supreme Court case law).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). The factual allegations must be sufficient to raise a plaintiff's right to relief beyond the merely speculative level to demonstrate that the claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). This requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While this "plausibility standard" does not amount to a "probability requirement," it does ask for "more than a sheer possibility." *Iqbal*, 556 U.S. at 678. Stated differently, in reviewing the well-pleaded factual allegations and

assuming their veracity, this Court must "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Much ink has been spilt on the issue of whether, under ERISA, exhaustion of administrative remedies is a jurisdictional prerequisite (which must be adequately pled in the complaint) or a non-jurisdictional affirmative defense (as to which defendant has the burden). In *Metro Life Ins. Co. v. Price*, 501 F.3d 271 (3d Cir. 2007), the Third Circuit squarely held that because the ERISA exhaustion was judicially created, it is a "nonjurisdictional affirmative defense." *Id.* at 280. Although several earlier Third Circuit cases had called the ERISA exhaustion requirement "jurisdictional," they did so without analysis, and *Metro Life* set them aside. *Id.* at 279–80.

That being the case, a plaintiff "is not required to plead facts showing that [she] exhausted [her] remedies." *Id.* at *3. *Deblasio v. Cent. Metals, Inc.*, No. 1:13-CV-5282 NLH/AMD, 2014 WL 2919557 (D.N.J. June 27, 2014) (Hillman, J.). Here, however, Lewis-Burroughs *has* pleaded that she "has exhausted all administrative remedies under the Plan's claims procedure." (Compl. ¶¶ 15, 68) And her complaint pleads many facts on which she bases her claim that, because Prudential did not timely decide her appeal, she may be deemed to have exhausted her remedies.

Post-*Metro Life*, cases in this district have continued to consider exhaustion arguments in connection with motions to dismiss.[2] The explanation may be that, although a plaintiff is not required to plead facts in support of

---

[2] *See, e.g., Schweikert v. Baxter Healthcare Corp.*, No. CIV.A. 12-5876 FLW, 2013 WL 1966114, at *4 (D.N.J. May 10, 2013) (plaintiff failed to show that pursuit of administrative claim would have been futile); *Guariglia v. Local 464A United Food & Commercial Workers Union Welfare Serv. Ben. Fund*, No. CIV.A. 13-01110 SDW, 2013 WL 6188510, at *3 (D.N.J. Nov. 25, 2013) (granting a motion to dismiss where plaintif failed to argue that she pursued an administrative appeal at all); *Van Doren v. Capital Research & Mgmt. Co.*, No. CIV.A. 10-1425 KSH, 2010 WL 5466839, at *6 (D.N.J. Dec. 30, 2010) (granting a motion to dismiss based on failure to exhaust administrative remedies); *Dupont v. Sklarsky*, No. CIV A 08-1724 (JAP), 2009 WL 776947, at *11 (D.N.J. Mar. 20, 2009) (deciding a motion to dismiss based on ERISA exhaustion).

6

exhaustion, the facts that *are* pled may be considered if they definitively establish that remedies were not exhausted.

I will therefore examine the face of the complaint to determine whether, as Prudential claims, it conclusively establishes that Lewis-Burroughs failed to exhaust administrative remedies.

### 2. Exhibits proffered by Prudential as to exhaustion of administrative remedies

Defendant Prudential has submitted six exhibits in connection with its Rule 12(b)(6) motion. They are:

Ex. A-Letter from Prudential to Lewis-Burroughs, dated November 9, 2012, informing her that her benefits would expire on August 13, 2013. (Dkt. No. 9-2, at 1)

Ex. B-Lewis Burroughs's letter appeal of Ex. A denial, dated January 8, 2013. (Dkt. No. 9-2, at 5)

Ex. C-Letter from Prudential to Lewis-Burroughs, dated June 17, 2013, reiterating Ex. A and stating that Prudential had "closed the claim" as of August 13, 2013. (Dkt. No. 9-2, at 8)

Ex. D-Lewis-Burroughs's appeal from the denial of benefits (see Ex. C), submitted December 12, 2013. (Dkt. No. 9-2, at 16)

Ex. E-Letter from Prudential to Lewis-Burroughs, dated February 28, 2014, stating that Prudential regards her appeal as "complete" as of January 15, 2014, when she submitted the Functional Capacities Evaluation, and calculating the 90-day deadline as running from that date. (Dkt. No. 9-2, at 71)

Ex. F-Long Term Disability Plan. (Dkt. No. 9-2, at 73)

Documents integral to or relied upon in a complaint may of course be considered on a Rule 12(b)(6) motion, even if they are not literally attached. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)); *Pension Ben. Guar. Corp. v. White Consol.*

7

*Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.")[3] I find that these documentary exhibits are integral to the complaint. The complaint specifically alleges the denials and appeals embodied in Exhibits A, B, C, D, and E (Compl. ¶¶ 52, 56, 62, 66, 69). The terms of Exhibit F, the Plan itself, permeate the Complaint. I have therefore considered these exhibits in connection with the Rule 12(b)(6) motion.

---

[3]   Alternatively, a court faced by such a proffer has the option to convert the motion to one for summary judgment.

> **(d) Result of Presenting Matters Outside the Pleadings.** If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). I do not choose to do so at this early stage. *See Deblasio, supra* (declining to convert motion to dismiss to a summary judgment motion where defendant argued failure to exhaust administrative remedies in ERISA case); *but see Ruiz v. Campbell Soup Co.,* No. CIV. 13-2634 NLH JS, 2013 WL 6858787, at *4 (D.N.J. Dec. 30, 2013) (converting to summary judgment where plaintiff himself had proffered the additional documents, but giving both parties the opportunity to submit additional evidence).

## III. ANALYSIS

An ERISA plan participant has the right to bring a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). A federal court will generally refuse to consider claims to enforce the terms of a benefit plan if the plaintiff has not first exhausted the remedies available under the plan. *See Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990). Those remedies include an administrative appeal; after the appeal is denied, the plan participant may seek review by filing a district court action.

That exhaustion requirement is waived, however, when the participant has filed an administrative appeal from the denial of benefits, but the plan provider has failed to timely decide it. *See Mass. Mut. Life Ins. Co. v. Russel*, 473 U.S. 134, 144 (1985). If the deadline to decide an appeal passes without a decision, the plan participant's claim is "deemed denied" and her administrative remedies are presumed exhausted. *Russel*, 473 U.S. at 144; *see also* 29 C.F.R. § 2560.503-1(l) ("In the case of the failure of a plan to... follow claims procedures consistent with the [timeliness] requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act.") Accordingly, if a plan participant's appeal is not decided timely, she may bring a civil action. Lewis-Burroughs says that is what she has done here.

Did Prudential blow the deadline to decide Lewis-Burroughs's appeal? That depends on whether Lewis-Burroughs's supplemental submission on January 15, 2015, restarted the 90-day clock. If it did, as Prudential contends, then the Complaint was filed prematurely and must be dismissed for failure to exhaust administrative remedies. If it did not restart the clock, as Lewis-

Burroughs contends, then the appeal is deemed denied and the action is properly before this Court.

The parties are bound by the appeal process set forth in the Plan. *See Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S.Ct. 604, 612 (2013) (recognizing "the particular importance of enforcing plan terms as written in § 502(a)(1)(B) claims"). The Plan states that Prudential "shall" decide an appeal no later than 90 days after "the receipt of [the plan holder's] appeal request." (Dkt. No. 9-2, at 118) There is no dispute that Prudential received Lewis-Burroughs's appeal on December 12, 2013. Therefore, the 90-day period started running on that day. This literal reading of the Plan is strongly supported by 29 C.F.R. § 2560.503-1(i), which expressly states that the deadline for deciding an appeal begins when the "appeal is *filed*"... "without regard to whether all the information necessary to make a benefit determination on review accompanies the filing." 29 C.F.R. § 2560.503-1(i)(4) (emphasis added). The question whether Lewis-Burroughs's appeal contained "all the information necessary" for Prudential to reach a decision is therefore irrelevant; the date of filing controls.

Prudential counters that both the Plan and 29 C.F.R. § 2560.503-1(i) allow for the tolling of the 90-day deadline if the plan holder supplements her appeal with additional materials. Therefore, argues Prudential, the deadline to decide Lewis-Burroughs's appeal was "tolled" until it received her January 15, 2014 submission. (Motion to Dismiss, Dkt. No. 9-3, at 11) As a result, it says, the 90-day deadline did not begin to run until that day, and consequently did not end until April 14, 2014. (*Id.*)

These tolling provisions do not operate in the manner depicted by Prudential. The Plan provides that Prudential must decide an appeal within 45 days unless it determines that "special circumstances" require an additional 45-day extension of time. (Dkt. No. 9-2, at 118) In order to invoke this

extension, Prudential must send "[a] written notice of the extension" which contains "the reason for the extension and the date that [it] expects to render a decision" before the first 45-day period expires. (*Id.*) If, however, the "reason" for the extension is that the participant "fail[ed] to submit information *necessary* to decide the appeal," then "the period for making the benefit determination will be tolled (i.e. suspended) from the date on which the notification of the extension is sent to [the plan holder] until the date on which [the plan holder] respond[s] to the request for additional information." (*Id.*)

The tolling provision in 29 C.F.R. § 2560.503-1(i) is similar. That regulation states that the plan provider must decide an appeal within 45 days, or inform the plan holder in writing that it will require an additional 45 days to reach a decision. The written notice must "indicate the special circumstances requiring an extension of time and the date by which the plan expects to render the determination on review." 29 C.F.R. § 2560.503-1(i)(1). Again, the provision provides for tolling "in the event that a period of time is extended…due to a claimant's failure to submit information *necessary* to decide a claim." In such a case, "the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information." 29 C.F.R. § 2560.503-1(i)(4) (emphasis added).

Tolling, then, cannot be employed as a *post hoc* justification for delay; it must be invoked at the time, and certain requirements must be met. Both the Plan and the Regulation, cited above, impose three pre-conditions on the tolling of the deadline to decide an appeal: (1) the plan holder must have failed to provide information "necessary" to the resolution of the appeal; (2) before the initial 45-day period expires, Prudential must send the participant written notice that it is claiming the extension; and (3) that notice must list the "necessary" information that Prudential requires from the participant.

11

Even if these preconditions are met, the 90-day clock does not, as Prudential suggests, *restart from zero* when Prudential receives the "necessary" information from the applicant. Rather, the clock's running is *suspended* from the date that Prudential sends the notification of extension until the date the plan holder furnishes the "necessary" information. Prudential's "reset button" interpretation of tolling finds no support in the Regulation or in the Plan—which helpfully explains that the period "will be tolled (i.e. suspended)." (Dkt. No. 9-2, at 118)

Prudential states in its reply brief that it "notified Plaintiff it would need additional time to conduct the review by sending a 'written notice of extension' while the appeal was pending." Neither the Complaint nor the supplementary documents submitted by Prudential support that assertion. (Reply Brief, Dkt. No. 11, at 9-10) Indeed, the evidence submitted by Prudential actually undercuts its position on the tolling issue. Prudential's letter of February 28, 2014, states: "Regarding the 45 days and the 90 days, we determined that you have filed a complete appeal as of January 15, 2014 upon your submission of the Functional Capacities Evaluation." (Dkt. No. 9-1, at 72)

Neither the Plan nor the Regulation permits that kind of unilateral, retroactive deeming. The premise of the entire tolling scheme is that an appeal is filed; some number of days run (let's say 45); Prudential requests "necessary" information (stopping the running of the clock); the applicant then supplies the information (resuming the running of the clock); and then the 45 days remaining on the clock run. By definition, the date on which the plan provider receives the information cannot be the date upon which the appeal was "filed."

As one court has observed, "[r]estarting Prudential's clock every time a claimant submits records would in many situations give Prudential an endless amount of time to consider appeals and might discourage claimants from submitting relevant new medical information." *Tomassi v. Prudential Ins. Co. of America*, 2007 WL 1772117, at *4 (N.D. Ill. June 19, 2007). Rather, tolling is a

process that Prudential must formally set in motion by requesting documents "necessary" to the decision of the appeal.

Here, there is no indication that Prudential ever notified Lewis-Burroughs that it lacked information "necessary" to the resolution of the appeal, or that Prudential ever requested an extension because such "necessary" information was missing. Indeed, without such a demand by Prudential, there would be no way to define the tolling period.

In short, the record before me does not indicate that the tolling process was ever triggered at all. Accordingly, I hold that Lewis-Burroughs's supplemental submission on January 15, 2015, did not restart the time period in which Prudential was required to decide her appeal.

Prudential, arguing in the alternative, invokes the "substantial compliance" doctrine. Prudential stresses that it communicated with Lewis-Burroughs regarding the status of her claim, acted in good faith, and did not unreasonably delay the appeal process. Under the circumstances, says Prudential, its "failure to comply with the regulation deadlines may be excused." (Brief, Dkt. No. 11, at 7-8)

The "substantial compliance" doctrine holds that so long as a plan provider substantially complies with a plan's procedures, its discretionary decisions are entitled to deferential review by the courts. In the cases cited by Prudential, however, the plan provider actually made a decision, if belatedly. For example, in *Topalian v. Hartford Life Ins. Co.*, 945 F. Supp. 2d. 294, 336 (E.D.N.Y. 2013), the plan provider denied the plaintiff's administrative appeal from the denial of LTD benefits, but did not do so until "long after the regulatory time period set forth under 29 C.F.R. §§ 2560.503–1(i)(1)(i), 2560.503–1(i)(3)(i)." The plaintiff argued that the provider therefore had forfeited the right to have a court defer to its exercise of discretion, and sought

*de novo* review. The court, relying on the substantial compliance doctrine, rejected plaintiff's position.

Substantial compliance presents factual issues that I cannot resolve in Prudential's favor on a motion to dismiss.[4] I do observe, however, that Prudential did not "substantially comply" with its obligation to decide Lewis-Burroughs's appeal. It does not appear that Prudential ever decided that appeal at all. Rather, the appeal was *deemed* denied because Prudential had failed to act.

Prudential would no doubt say that it made a good faith, if erroneous, effort to determine the deadline, and that its efforts were cut off by Lewis-Burrough's court filing. I am wary, however, of an interpretation of substantial compliance that rewards inaction by barring the courthouse door. As courts in this district have recognized, "the substantial compliance doctrine may be relevant when a claimant challenges an administrator's decision, but it is quite problematic to use it to find, in the absence of a decision, that a claimant has no right to sue." *Ziesemer v. First Unum Life Ins. Co.*, 2007 WL 2123693, at *5 (D.N.J. July 20, 2007).

The Third Circuit has not decided this issue, but, as Judge Chesler noted in *Ziesemer*, the Second Circuit has:

> The Second Circuit considered "substantial compliance" in this context in 2005 in [*Nichols v. Prudential Ins. Co. of America*, 406 F.3d 98, 106 (2d Cir. 2005)]. The Court observed that substantial compliance, as a doctrine that excuses "technical noncompliance for purposes of review of a plan administrator's discretionary decision," must be differentiated from "the very different question of whether substantial compliance can block or delay a plaintiff's access to the federal courts." *Id.* at 107. The *Nichols* Court, facing

---

[4] I do not consider, for example, defense counsel's certification, in which he asserts that he requested from plaintiff's counsel a voluntary stay pending the outcome of the appeal, but did not receive it. (Dkt. No. 9-1)

14

> the latter question, rejected the insurer's "substantial compliance" arguments, stating: "adopting the proposition that substantial compliance can delay accrual of the right to sue would permit plan administrators to indefinitely tie up claimants, who are often in immediate need of benefits, with ongoing requests for information. Such a result would render the plain language of Section 2560.503-1(h)(1) a nullity." *Id.*

2007 WL 2123693, at *5. Like Judge Chesler, I find the Second Circuit's analysis persuasive. At least in the context of a motion to dismiss, I cannot find that the substantial compliance doctrine would affect Lewis-Burroughs's right to commence this action.

For the foregoing reasons, I find that Prudential has failed to satisfy its burden of persuasion that no claim has been presented. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (stating that on a Rule 12(b)(6) motion, the defendant "bears the burden of showing that no claim has been presented"). Lewis-Burroughs alleges that Prudential failed to decide her appeal within the requisite time period, that her claim was deemed denied as a result of this failure, and that this denial violates her right to receive certain benefits under the Plan. These allegations plausibly set forth an entitlement to relief (or rather to *seek* relief) in this Court.

## IV.   CONCLUSION

For the reasons set forth above, Prudential's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is **DENIED**. An appropriate order will issue.

_____
KEVIN MCNULTY, U.S.D.J.

Date: April 30, 2015